GEORGE H. RICHARDS, trustee, *vs.* CHURCH HOME FOR ORPHAN AND DESTITUTE CHILDREN & others.

Suffolk.    December 9, 1912. — January 29, 1913.

Present: HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Trust,* Charitable. *Devise and Legacy. Massachusetts General Hospital.*

A widow, whose husband had died in 1834 after having been insane and treated by physicians who had been influential in the establishment of the Massachusetts General Hospital and particularly of the McLean Asylum for the Insane, which was maintained by it, made a will in 1869, in which she provided that two thirds of a trust fund should be paid by the trustee under her will " to the Massachusetts Hospital Life Insurance Company, to be used only, so far as the same will go, to provide free treatment for the insane in the Asylum of the Corporation." The testatrix died in 1870. The Massachusetts General Hospital was incorporated by St. 1810, c. 94, and from about 1818 had maintained the McLean Asylum for the treatment of the insane and in 1869 was the only charitable corpora-

tion in the Commonwealth for the treatment of the insane. The Massachusetts Hospital Life Insurance Company was chartered by St. 1817, c. 180, and, its charter giving it no power to act as trustee under the provisions of the will, it declined to act. By §§ 7, 8 of its charter it was obliged to pay a certain share of its profits from insurance to the Massachusetts General Hospital. On a bill in equity by the trustee for instructions, a single justice ordered a decree that the designated fund be paid to the Massachusetts General Hospital as trustee, and reported the case. *Held,* that the trust was for a charitable purpose; that the testatrix, by the words "Asylum of the Corporation," meant the McLean Asylum; that, since the trustee designated in the will could not act, it merely was necessary to appoint a new trustee; and that under the circumstances it was fitting that the Massachusetts General Hospital should act as such trustee.

BILL IN EQUITY, filed in the Supreme Judicial Court on May 22, 1911, by the trustee under the will of Sarah Elizabeth Cazenove, late of Boston, for instructions as to what disposition he should make of a fund of about $90,000 which remained in his hands subject to the following provision in the will:

"Fourteenth, all the rest and residue of this Trust Fund, be the same more or less, I direct my Trustee to pay over as follows: one third part to the 'Church Home,' so called, in the City of Boston, for the general uses and purposes of the Society, and the other two thirds part to the Massachusetts Hospital Life Insurance Company, to be used only, so far as the same will go, to provide free treatment for the insane in the Asylum of the Corporation."

The Massachusetts Hospital Life Insurance Company had no power under its charter to accept or administer the trust, and declined it.

The case was heard by *Hammond,* J., upon an agreed statement of facts, from which it appeared that the testatrix made her will on May 18, 1869, and died on December 6, 1870, at the age of sixty-four, having lived for the greater part of her life in Boston. Her husband had died in 1834. The Massachusetts General Hospital was incorporated by St. 1810, c. 94. In 1818 it constructed a hospital building in Boston, and at or about that time a building in Somerville for treatment of the insane. This department of the hospital at first was called the McLean Asylum, in memory of one of the principal benefactors of the hospital, and in 1895 it was removed to Waverley, and is now located there, being known as the McLean Hospital. At all times it has been maintained and conducted as an asylum for the insane, solely by the Massachusetts General Hospital, and it is a part of the Massachusetts General

Hospital, and has never been a separate organization. The Massachusetts General Hospital at the time the will was drawn was in fact the only charitable corporation in Massachusetts for treatment of the insane. Funds specially set apart for the endowment of the McLean Hospital are held by the Massachusetts General Hospital, but the income from this endowment meets only a part of the expenses. Income from such endowments is used partly to maintain free beds and partly to pay the expense of patients who are not able to pay the whole cost of service to them. Pauper insane are, and always have been, removed to some State institution. The Massachusetts General Hospital at the time this will was made was sometimes known as and called the "Massachusetts Hospital."

Charles J. Cazenove, husband of the testatrix, was a merchant in Boston. At the time of his decease, in 1834, he was insane, his malady being due to an accident. He was never an inmate of the McLean Asylum, or, so far as known, of any asylum, but was cared for in his own home in Boston during his last illness. During his last sickness he was treated by Dr. John C. Warren and Dr. Rufus Wyman. Both of these physicians were then affiliated with the Massachusetts General Hospital. Dr. Wyman was the first physician to occupy the position of physician and superintendent of the McLean Asylum, and Dr. John C. Warren was one of the founders of the hospital, a circular letter from Dr. Warren and Dr. James Jackson to wealthy citizens of Boston being the first step in a campaign to raise funds to establish the hospital.

The single justice in his report of the case stated: "I was unable to find as a matter of fact that by the words 'Massachusetts Hospital Life Insurance Company' the testatrix meant 'Massachusetts General Hospital,' but I ruled that the dominant purpose of the testatrix was to make the gift charitable, and that it is a charitable gift. I further ruled that, since the Massachusetts Hospital Life Insurance Company declines to act to carry out this charitable purpose, the doctrine of *cy pres* may be applied, and I found as a fact that the Massachusetts General Hospital is preeminently fitted to take the fund and carry out the charitable purpose of the testatrix. I accordingly ordered that there be a decree, (1) That one third part of the residue in question be paid to the defendant Church Home for Orphan and Destitute Chil-

dren; (2) That two thirds of the residue in question be paid to the defendant Massachusetts General Hospital."

At the request of certain of the next of kin of the testatrix, the single justice reported the case for determination by the full court.

*L. H. H. Johnson*, for the plaintiff, stated the case.

*H. S. Davis*, for Anne W. Sherman and others.

*F. E. Barnard*, for Harriet G. Bartlett and another, submitted a brief.

*J. Abbott*, for the Massachusetts General Hospital.

SHELDON, J.  This case has been reported to the full court by a single justice upon the pleadings, the agreed facts and his own findings.  The statement of facts agreed gives power to draw inferences therefrom.  The question is as to the bequest in the fourteenth clause of the will of Sarah E. Cazenove of two thirds of the residue of a trust fund "to the Massachusetts Hospital Life Insurance Company, to be used only, so far as the same will go, to provide free treatment for the insane in the asylum of the corporation."  This was upon its face a good charitable gift to the legatee named for the purpose specified by the testatrix.  And in our opinion it sufficiently appears that by the words "the asylum of the corporation" the testatrix meant the McLean Asylum, now called the McLean Hospital, which was then and still is maintained as an asylum for the insane by the Massachusetts General Hospital. That was not merely the only charitable corporation in this Commonwealth for the treatment of the insane, but it was one with which the insurance company named as the legatee had a direct connection.  The insurance company, by the terms of its charter (St. 1817, c. 180, §§ 7, 8), was obliged to pay a certain share of its profits from the insurance business to the Massachusetts General Hospital, and thus to contribute to the maintenance of this asylum.  It was not wholly an inaccurate description of the asylum to call it the asylum of the insurance company; for it was the asylum, and the only asylum, which for its support might be dependent in part upon the contribution which the insurance company would be required to make.  Certainly this description could be applied to no other asylum for the insane.  That is enough.

We have then a bequest made to a designated trustee for a definite charitable purpose; but the trustee declines to accept the bequest or to carry out the trust, and indeed has not by its charter

the power to do so. The trust can however as well be administered by any other trustee as by the one whom the testatrix selected. In such a case the charitable purpose should not be defeated by the failure or inability of the trustee to act, but a new trustee should be appointed to administer the trust in the manner appointed by the testatrix. It is not like the cases relied on by her next of kin, in which the charitable purposes cannot be carried out and must be either abandoned or administered on the *cy pres* doctrine; and those decisions are not applicable here. It is merely necessary to appoint a new trustee. The case at bar resembles more nearly *Richardson* v. *Mullery,* 200 Mass. 247, than *Bowden* v. *Brown,* 200 Mass. 269, though it differs from both of them in the fact that here the charitable purpose of the testatrix can be fully and exactly carried out by another trustee than the one nominated in the will. Under these circumstances it is eminently fitting that the legal title should be taken and the trust administered by the Massachusetts General Hospital, the owner and maintainer of the asylum in question.

The finding of the single justice was not, as has been claimed by the next of kin, that the testatrix did not intend to make a gift for the benefit of the McLean Asylum, but merely that the bequest was not made to the Massachusetts General Hospital. We agree with the finding. The bequest was made to the insurance company, though in trust for the benefit of the asylum, as has been said.

It is plain, and has not been disputed, that the other one third part of this fund should be paid to the Church Home for Orphan and Destitute Children.

The petitioner is to be instructed that one third part of this fund should be paid to the Church Home just mentioned, and two thirds thereof to the Massachusetts General Hospital, to be used only, so far as it will go, to provide free treatment for the insane in the McLean Asylum or Hospital.

*Decree accordingly.*