CHARLES C. READ & another, executors, *vs.* WILLARD HOSPITAL & others.

Suffolk.    March 21, 1913. — May 24, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Charity. Devise and Legacy,* Charity.    *Trust,* Charitable.

Where by a provision in a will a legacy of $5,000 is given to a certain private charitable corporation, which, although in existence at the time of the testator's death, refuses the gift and waives its claim thereto, the legacy does not vest in such corporation, nor does it lapse; but it is a valid charitable gift, and, if there is another private charitable corporation which is established and carried on for substantially the same purpose and which apparently is the only such private institution in existence in the Commonwealth, a decree may be made, in a bill in equity by the executor for instructions, directing that the legacy be paid to the second corporation to be held by it in trust for the same purpose for which it would have been used if the first corporation had accepted it.

BILL IN EQUITY for instructions, filed in the Supreme Judicial Court on September 27, 1912, by the executors of the will of Sarah Elizabeth Read, late of Boston, against the Willard Hospital, the Frances E. Willard Settlement, the Washingtonian Home, and the Trustees of the Foxborough State Hospital, all Massachusetts corporations, and certain persons who were residuary legatees under the will.

The instructions sought were as to what disposition should be made of the following legacy contained in a codicil to the will: "Sixth. I give and bequeath to the Willard Hospital for dipsomaniacs, of Bedford, Massachusetts, the sum of Five Thousand (5000) Dollars;"

The Willard Hospital declined to receive the legacy. The Washingtonian Home and the Trustees of the Foxborough State Hospital each asked that it be permitted to receive and administer the funds. The Frances E. Willard Settlement asked that the *cy pres* doctrine be applied and the fund paid to it. The residuary legatees contended that the legacy had lapsed and fallen into the residue and that they were entitled to it.

There was an agreed statement of facts, from which the following appeared:

The will was dated April 7, 1902. The material codicil was dated February 24, 1905. The fourth and last codicil was dated October 18, 1909.

The Willard Hospital was organized on January 31, 1900, under Pub. Sts. c. 115, relating to charitable corporations, "for the purpose of the establishment and maintenance of a hospital for the treatment of dipsomania and narcomania." It had no capital stock and paid no dividends. Some patients paid for treatment and some were treated free. They came from all parts of the United States. It was a public charity. In carrying out its purpose, it relied largely upon the services of Dr. Sidney B. Elliot, who, as superintendent and physician, had full charge of the hospital and of its business, and who was a friend of the testatrix. In the latter part of the year 1909 Dr. Elliot died, and the hospital, being unable to continue without him, was discontinued and sold with most of its real estate to the defendant Frances E. Willard Settlement. The Willard Hospital surrendered its certificate of incorporation and was dissolved on February 10, 1913.

The Washingtonian Home was incorporated in Massachusetts in 1859, "for the purpose of providing a retreat for inebriates and means of reforming them." It has carried on its work, gradually increasing it, to the present date, treating only male cases, and has a thoroughly equipped modern plant with an efficient corps of expert doctors and attendants, fully prepared to give the latest, approved treatment for the care of inebriates, and it devotes itself exclusively to this work. It has real estate at No. 41 Waltham Street in Boston, and during the year ending April 21, 1912, nine hundred and forty-six patients were treated there. The entire number of patients admitted to the Home and cared for since its incorporation up to said date is 21,955. It is a public charity, has no capital stock, and pays no dividends. It is the only charitable corporation incorporated under the laws of Massachusetts and now doing business in Massachusetts for the exclusive purpose of providing a retreat for male inebriates and means of reforming them. All the money which it receives it uses in the care and treatment of its patients, and the more money it receives the more patients it can treat. Some patients pay for treatment and some are treated free.

They come from Massachusetts and all over the United States. It was agreed that the term "inebriate" includes those suffering from dipsomania and narcomania.

The Frances E. Willard Settlement was incorporated on July 7, 1903, "for the purpose of providing, maintaining and supporting a home or homes for young working women, or women earning very low salaries, or those training for self-support who need temporary aid, and helping in any possible way those who are strangers and need assistance; also establishing, maintaining and supporting a settlement for the social, educational and moral enlightenment and training of those with whom it comes in contact." It is a public charity, has no capital stock, and pays no dividends. In carrying out its purposes it has had occasion to minister to the needs of about two hundred females suffering from narcomania and its results, in greater or less degree. This work has consisted of providing medical diagnosis and treatment by competent physicians and of the care of the patients by competent nurses. In all cases requiring medical treatment the advice and instructions of competent physicians have been taken and followed, under the supervision of nurses whenever necessary. No particular or technical name can be given to the form of treatment prescribed, which has in each case been adapted to the special requirements of the particular patient. Since the acquisition by the Frances E. Willard Settlement of the hospital buildings and the greater part of the land formerly belonging to the Willard Hospital, this treatment of persons suffering from narcomania has been of much more value by reason of the possession of the Willard Hospital plant. The Frances E. Willard Settlement, however, does not confine its activities to the ministering to persons suffering with narcomania, which latter is but a small part of its activities under its charter. As an important adjunct to its work, it maintains a dispensary, open and free to the public, at which several competent and reputable physicians are in daily attendance, in order to advise, prescribe for and treat persons suffering from all diseases, including both dipsomania and narcomania, and many persons are relieved by this means.

The trustees of the Foxborough State Hospital are conducting a public hospital for the treatment of patients suffering from dip-

somania or narcomania, in any of its forms, and other diseases, in accordance with the laws of the Commonwealth regulating the conduct of the Foxborough State Hospital.

The case was heard upon the agreed facts by *De Courcy,* J., and was reserved by him for determination by the full court.

*C. C. Read,* for the executors, stated the case.

*J. E. Young,* for the Washingtonian Home.

*F. W. Fosdick,* for the Frances E. Willard Settlement.

*J. Codman,* (*R. W. Dunbar,* with him,) for residuary legatees.

*J. M. Swift,* Attorney General, *& W. A. Powers,* Assistant Attorney General, for the Trustees of the Foxborough State Hospital.

SHELDON, J.   The Willard Hospital never accepted this legacy, and now waives its claim thereto.   Accordingly the legacy did not vest in it, and never became its property.   *Ward* v. *Ward,* 15 Pick. 511, 525.   *Burr* v. *Boston,* 208 Mass. 537, 538.   So the disposition thereof could not have been determined in the former suit of the Willard Hospital, in which only the assets of the plaintiff in that suit were brought in question.   According to the agreement in that suit, the present question properly was left to be passed upon in this proceeding.

But the legacy did not lapse.   It was given to a charitable corporation, which could apply it only for the specific charitable purpose for which the corporation had been organized, the hospital treatment of dipsomania and narcomania.   It was given, and if accepted would have been taken in trust for that purpose, just as if it had been so recited in the will.   *Hubbard* v. *Worcester Art Museum,* 194 Mass. 280, 290.   It was a valid charitable gift; and the only difficulty is that the trustee to which it was given, though in existence at the death of the testatrix, did not accept the trust and has since ceased to exist.   All that is necessary is to appoint a new trustee, as in *Richards* v. *Church Home for Orphan & Destitute Children,* 213 Mass. 502.

If the *cy pres* doctrine were to be applied, it might be necessary to remit the case to a single justice or to a master to frame a scheme.   But that is not so.   All the facts have been agreed; and the case comes before us upon a reservation by the terms of which a proper decree is to be entered.   The fund is small, and further expense ought to be avoided.   The whole matter should be now determined, as was done in the case last cited.

The purpose for which the Washingtonian Home was established and is carried on, though described in different words, is substantially the same as was that of the Willard Hospital. Apparently it is the only private institution of which that can be said. The testatrix preferred a private institution to be the almoner of her bounty; and as there is no reason to the contrary, we respect her preference.

We see no sufficient reason for not following the usual rule as to costs and allowances.

A decree is to be entered instructing the petitioner to pay the fund to the Washingtonian Home, to be held by it in trust for the hospital treatment of dipsomania and narcomania.

*So ordered.*