Frank C. Smith, Jr., & another, executors, *vs.* Jessie
Livermore & others.

Worcester.    February 4, 1937. — September 17, 1937.

Present: Pierce, Field, Donahue, & Lummus, JJ.

*Devise and Legacy*, Lapsed legacy, Residue, Codicil, Preferred legacy,
    Construction of particular phrase, General rules of construction,
    Creation of trust, Extrinsic evidence affecting construction, Identity
    of beneficiary, Charity, Conditional legacy, Time of vesting, Taxa-
    tion. *Will*, Codicil. *Trust*, What constitutes, Charitable, Termina-
    tion, Payment of income. *Probate Court*, Petition for instructions.
    *Charity. Evidence*, Extrinsic affecting writing. *Executor and Admin-
    istrator*, Distribution, Interest on legacy. *Words*, "Creating trust
    funds," "Reversions and remainders," "Then," "Satisfied in full."

Where an estate was insufficient to pay legacies in full, the sums repre-
    sented by lapsed legacies were applied to the payment of the de-
    ficiency and were not divided among the residuary legatees, although
    the will provided that lapsed legacies "shall become part of the resi-
    due."
A clause near the end of a will setting forth a general scheme for the
    priority of payment of certain of "the foregoing bequests" in case the
    testator's estate was insufficient to pay all bequests, applied not only
    to the will itself but also to substitute or additional bequests in a
    codicil.
A provision in a will that if the estate was insufficient "to pay all the . . .
    bequests in full" preference was to be given to "clauses . . . making
    bequests of" $5,000 or more, placed in the preferred classification
    clauses which gave bequests aggregating $5,000 or more to a class or
    group to be determined at the testator's death although no member
    of the class or group might receive that sum.
Two separate clauses, one giving a bequest of $5,000 and the other a
    bequest of less than $5,000 to the same legatee, could not be com-
    bined in order to obtain preference for the bequest under $5,000 under
    the foregoing provision.
For the purposes of construction of a will, the circumstances known to
    the testator and apparently in his mind at the time of its execution
    are to be considered.
A single clause of a will which was inconsistent with the general scheme
    followed by the will was not given effect to render the general scheme
    ineffectual.
In construing a provision of a will giving preference, in the event of a
    deficiency of assets, to "clauses creating trust funds," those words
    included trust funds created without express words of trust.

Gifts to legatees, if they were living at the testator's death, which were construed as suggesting, but not commanding, what use should be made of the legacies, and a gift to another legatee, if living at the testator's death, "as a token of personal regard and a gift to his young daughter," were not gifts "creating trust funds" entitled to a preference, provided in the will in case of deficiency of assets, for such gifts; but a gift to a named legatee, if living at the testator's death, "for the son . . . who bears my Christian name" and providing that if "said son is not living at . . . my death, then I give said sum . . . to his father," and sundry gifts to charitable corporations with directions to use the income therefrom for limited purposes within their respective charitable purposes, were gifts "creating trust funds" entitled to such preference.

Under a will with a residuary clause which bequeathed "all reversions and remainders," legacies to named individuals with provisions that in certain contingencies they should be "distributed" or "divided in accordance with the residuary clause," were, as part of the residue, subject to the payment of deficiencies in pecuniary legacies in priority to payment to residuary legatees.

Where the life beneficiary of a testamentary trust died before the testator, there was no occasion for setting up the trust and the fund was to be distributed by the executors.

Instructions as to distribution of a trust fund were refused where the time for distribution had not arrived.

A legacy to a named person "if he is living at the date of my death . . . to be held by him for" his grandson, lapsed where the named legatee died before the testator, although the grandson survived the testator.

A legacy to the "Massachusetts Historical and Genealogical Society," which was nonexistent, was construed in the light of extrinsic facts to mean a legacy to the Massachusetts Historical Society and not to the New England Historic Genealogical Society, both of which were existing societies.

By legacies to the "National Portrait Gallery in Edinburgh" and to the "National Portrait Gallery of Scotland," both nonexistent, a testator meant to make gifts to the Scottish National Portrait Gallery rather than to the National Gallery of Scotland.

In the absence of special provisions in a will, a sum of money given in trust, the income to be paid to a named beneficiary, was payable one year from the testator's death in an amount increased by the income which could have been obtained on the principal during that year; and in prorating the assets among the legatees upon the estate proving insufficient to pay all legatees in full, the amount of the trust legacy so increased should be used for that legacy and for the ordinary legacies the amounts specified in the will.

Under a will giving a life interest in a trust fund to a beneficiary conditional upon his accepting a life estate in the testator's real estate, another beneficiary, who became entitled under the will to the real estate in fee and the trust fund outright upon the first beneficiary's declining the life estate, was in the position of an ordinary legatee respecting the trust fund and was not entitled to the income thereof

from the date of the testator's death, but only to interest thereon beginning one year thereafter.

A provision in a will that the pecuniary legacies should be paid "in full" and that taxes thereon should be paid by the executor "from the funds in his hands, included within the residue," was inapplicable where, because the assets were insufficient to pay all the legacies, there was no residue; a further provision that in case of insufficiency of assets certain legacies should be "satisfied in full" before others were paid did not require payment of taxes on the preferred legacies in priority to payment of the deferred legacies.

PETITION for instructions, filed in the Probate Court for the county of Worcester on April 28, 1936, and afterwards amended.

The case was reserved and reported by *F. H. Chamberlain*, J., for determination by this court.

*J. O. Sibley*, stated the case.

*R. S. Bowditch*, for Frank C. Smith, Jr., and another, trustees.

*J. J. Mahon* of Maine, for Edward Farrington Abbott and others.

*T. H. Gage*, (*B. B. Gilman* with him,) for The American Antiquarian Society.

*J. S. Strahorn* of Maryland, for Willard A. Saunders.

*W. B. Manhard*, for Trustees of the Salisbury Municipal Charities and another.

*B. Prescott*, for W. Alexander Pittendreigh and another.

*H. W. Ogden*, (*J. S. Marsh* with him,) for Nathaniel Draper Whitin Allen.

*F. W. Grinnell*, (*F. H. Smith, Jr.*, with him,) for Massachusetts Historical Society.

*F. A. Turner*, for New England Historic Genealogical Society.

*E. J. Hughes*, of California, for Edward Randolph Simonson and others, submitted a brief.

*J. A. Plummer*, for Elizabeth Howard Blake and another, submitted a brief.

*H. D. Strack & E. R. McPherson, Jr.*, of New York, for Henri de Castellane, submitted a brief.

*E. J. Brennan* of Connecticut, for Mrs. Emil Stephan and another, submitted a brief.

*H. T. Davis & J. D. Merriam,* for Museum of Fine Arts of Boston, submitted a brief.

*G. R. Stobbs & L. E. Stockwell,* for Gladys Sewell and others, submitted a brief.

FIELD, J.    Albert H. Whitin, late of Northbridge, died testate on March 6, 1935.  The executors of his will brought this petition for instructions — which was later amended — in the Probate Court.  By consent of the parties the judge of probate reserved and reported, without decision, for the determination of this court the "petition and all questions of law involved" therein.  No evidence was submitted to the Probate Court "except the statements of facts presented to the court by counsel and admitted to be true."  These statements are incorporated in the record.

The will is dated October 14, 1926.  It contains divisions, each described as a "Clause" and numbered.  There are two hundred twenty-one such divisions.  The first codicil is dated June 18, 1927, and likewise contains divisions so described and numbered.  There are sixty such divisions.  Three later codicils deal only with the nomination of executors and trustees.  Clause 220 of the will provided: "All the rest and residue of my property, real, personal and mixed of every description and kind, including all reversions and remainders, I give, devise and bequeath in equal parts to the National Portrait Gallery in Dublin, Ireland and the Dulerick Gallery at Dulerick, England."  Clause 60 of the first codicil is as follows:

"I revoke clause 220 of my will and substitute in place thereof the following clause; Clause 220.  All the rest and residue of my property, real, personal and mixed of every description and kind, including all reversions and remainders, to the amount of twenty thousand (20,000) dollars, I give, devise and bequeath in equal parts to the American Antiquarian Society in Worcester, Massachusetts, and the Anglo-American Nursing Home in Rome, Italy.

"The balance of said residue in excess of twenty thousand (20,000) dollars, if any, I give, devise and bequeath to my devoted young cousin, Midshipman Willard A.

Saunders of the United States Naval Academy at Annapolis, Maryland."

Many of the questions involved in the petition arise by reason of the insufficiency of the assets of the estate, after paying taxes and expenses of administration, to pay the legacies in full, and depend in part on the meaning and application of clause 219 of the will. This clause was not changed by any codicil. It is as follows:

"If any of the legatees named in the foregoing clauses are not living at the date of my death, then the sums which would have belonged to such legatees if living, shall become part of the residue of my estate except as otherwise specified therein.

"If my estate does not amount to a sufficient sum to pay all the foregoing bequests in full, then I direct that the clauses creating trust funds and those making bequests of five thousand dollars (5,000) or more shall be satisfied in full before the others are paid.

"Except as provided in the preceding paragraph, I direct that all bequests under this will shall be paid in full and if at the time any of such bequests are paid, there is any state, national or other law requiring a tax to be paid upon the same, I direct my Executor hereinafter named to pay said taxes from the funds in his hands, included within the residue."

The petition as amended contains prayers for instructions designated by numbers from one to eleven. Some of the prayers have subdivisions designated by letters. We consider the prayers under the designations given them in the petition as amended.

1 A.  Numerous pecuniary legacies were given to persons if living at the date of the death of the testator who were not then living. A legacy also was given by the will to a person "if he is in my service at the date of my death." And another legacy was given to him by the first codicil on similar terms. He was not then in such service. It is not disputed that these legacies have lapsed. The petitioners, however, seek instructions "whether under the first

paragraph of Clause 219 the sums which would have belonged to the aforesaid legatees if living become part of the residue and should be divided among those entitled to the residue, or whether said sums on account of the estate being insufficient to pay the legacies in full, should be applied to the payment of such deficiency."

In the absence of language in the will to the contrary such sums remain a part of the general assets of the estate for distribution in the same manner as if such lapsed legacies had not been included in the will. Consequently, apart from the provisions of the first paragraph of clause 219, these sums would be available for the payment of deficiencies in other legacies payable from the general assets of the estate and would not pass as a part of the residue unless gifts previous thereto payable from such assets had been satisfied. *Tomlinson* v. *Bury*, 145 Mass. 346, 347. *Ansin* v. *Taylor*, 262 Mass. 159, 163. We think that the provisions of this paragraph make no change in this respect. Though clause 220 is a true residuary clause which, without the first paragraph of clause 219, would dispose of the sums in question if they were not needed to supply deficiencies in previous gifts (see *Dresel* v. *King*, 198 Mass. 546, 547), this paragraph serves to make certain that the testator intended such sums, if not needed for this purpose, to pass as a "part of the residue" rather than as intestate property. Naturally interpreted however the paragraph, by providing that such sums "shall become part of the residue," subjects them to the usual rule applicable to a gift of residue — that nothing passes thereby unless previous gifts have been satisfied — and does not manifest an intention to create an artificial residue by giving residuary legatees priority, with respect to such sums, over previous legatees. See *Nickerson* v. *Bragg*, 21 R. I. 296. See also *Porter* v. *Howe*, 173 Mass. 521, 525, 527. These sums are to be applied to the payment of deficiencies in previous legacies. This rule governs bequests given by the first codicil as well as those given by the will, for reasons stated later in another connection.

1 B, 1 C, 1 E, 2 A, 2 B, 3. There are a number of clauses

of the will and of the first codicil, each of which disposes of amounts of $5,000 or more in the aggregate, though no person will receive $5,000 or more thereunder. The question is presented whether the bequest or bequests by such a clause are preferred under the second paragraph of clause 219 providing that if the estate is not sufficient "to pay all the foregoing bequests in full . . . the clauses . . . making bequests of five thousand dollars (5,000) or more shall be satisfied in full before the others are paid."

Preliminary to the general question raised by the other prayers of the petition is the question presented by subdivision 1 E thereof whether the second paragraph of clause 219 of the will is applicable to the clauses of the first codicil. A number of those clauses make additional bequests; others make bequests in substitution for bequests made by the will. Such substitutions are effected by substituting for numbered clauses of the will prior to clause 219 clauses of like number. The will and codicils are to be read together as one instrument. *Lovering* v. *Balch*, 210 Mass. 105, 107. Even without the language of each later codicil ratifying and confirming the provisions of earlier instruments,* the will and the earlier codicils, except as modified or revoked, would be republished as of the date of the latest codicil. *Taft* v. *Stearns*, 234 Mass. 273. The language of the second paragraph of clause 219 of the will, unless limited by reference therein to "the foregoing bequests," is of such generality as to apply to a clause or bequest made by the first codicil. The clauses substituted by that codicil for numbered clauses of the will are to be read as taking their respective places in the will prior to clause 219 and come within its terms in all respects. Clause 219 of the will immediately preceded the residuary clause and clearly was intended to be a general provision applicable to all clauses and bequests made thereby — other than the residuary clause. Such clauses are described as "the foregoing clauses" and such bequests as "the foregoing bequests." When the first codicil is read with the will, the clauses of

---

* Each codicil to the will here being considered contained such ratifying and confirming provisions. — REPORTER.

the codicil making additional bequests have in form no particular place in the will as modified but in effect they are prior to the residuary clause. The more natural interpretation of the instrument is that the testator intended that clause 219 should continue to apply to all clauses of the will and codicils — and to bequests made thereby — other than the residuary clause — that he did not intend to take the clauses of the codicil making additional bequests out of the general scheme of the will, including the application of the second paragraph of clause 219. See *Washburn* v. *Sewall*, 4 Met. 63.

The will and the first codicil, as already pointed out, are divided minutely into clauses. Each clause deals with a particular object of the testator's bounty, though that object, in the clauses here in question, is a group of persons, many, if not all, of which groups may constitute "classes" in the technical sense. The language of the clauses varies. Clause 15 is typical of a number of them. By this clause it is provided, "I give the sum of ten thousand (10,000) dollars in equal parts to those of the children, if any, of my late cousin, Jacob Jackson Abbott who are living at the date of my death." In all cases, however, membership in each group or "class" was finally determined at the date of the testator's death. See *Smith* v. *Haynes*, 202 Mass. 531; *Boston Safe Deposit & Trust Co.* v. *Reed*, 229 Mass. 267, 271; *Ashley* v. *Lester*, 281 Mass. 261, 263. Whether each of these groups constitutes a "class" in the technical sense, and, if it does, whether the language of the gift to the "class" is such as to indicate an intention that there shall be a severance of interests at the date of the testator's death so that each clause makes a number of separate bequests rather than a single bequest to a "class" need not be determined. See *Shattuck* v. *Wall*, 174 Mass. 167, 169; *Whiting* v. *Cook*, 8 Allen, 63, 64. See also G. L. (Ter. Ed.) c. 197. The effect of the application of the second paragraph of clause 219 to the clauses in question depends on other considerations.

By a strictly grammatical construction of the paragraph, "clauses" of the kind therein described rather than "be-

quests" made by them are to be "satisfied in full." The word "clauses" is used only in this instance; other references are to "bequests." It would have been a simple matter to have provided that "bequests" of stated amounts should be preferred, but it is to be assumed that the language was chosen deliberately. Nothing in this paragraph or elsewhere in the will and the codicils furnishes sufficient reason for interpreting the language otherwise than in its ordinary and grammatical sense. Each clause, therefore, must be considered by itself, independently of other clauses. Bequests by different clauses to the same legatee cannot be combined for the purpose of this paragraph. Consequently the "bequests" by clauses 113 and 162* — each of which clauses disposes of less than $5,000 — referred to in the prayers of the petition designated as 2 A and 2 B, are not entitled to preference.

Each of the other clauses in question disposes of $5,000 or more in the aggregate though no person receives that amount under any such clause. The question presented is whether these clauses, or any of them, are clauses "making bequests of five thousand dollars (5,000) or more." This phrase, like the phrase "creating trust funds" is descriptive of clauses entitled to preference. The word "clauses" obviously is used distributively. The phrase applies to each separate clause. Conceivably it may limit preference either (a) to clauses, each of which makes bequests, however many, of the stated amount in the aggregate or (b), more narrowly, to clauses, each of which makes one or more separate bequests of that amount, with or without other bequests of lesser amounts.

The former meaning seems more natural. It is true that this meaning might have been expressed somewhat more simply by the words "disposing of five thousand (5,000)

---

* By clause 7 of the will, Amy Place was given $5,000; by clause 113, a gift of $2,500 was made to "Mr. and Mrs. Houghton, or to the survivor of them," and, if neither of them were living at the death of the testator, "said sum of" $2,500 was given to Amy Place.

By clause 161 of the will, $5,000 was given to Reverend Lewis Gilbertson if he survived the testator, and, if he did not so survive, $5,000 was given to his wife, if she then were living. By clause 162, the wife was given $2,500 if she were living at the death of the testator. — REPORTER.

dollars or more" but the language chosen is not inappropriate to express this thought. So interpreted the paragraph is relatively easy of application, distinguishing between clauses, each of which disposes of the stated amount in the aggregate, and clauses — of which there are many — each of which disposes of a lesser amount. And it carries out what appears to have been the dominant purpose of the testator. In most instances the amount disposed of by a particular clause is fixed irrespective of the number of persons sharing in the gift. Rarely does the testator display any knowledge of the number of shares into which the amount given by a clause possibly might be divided. Evidently his mind was directed in general to the total amount disposed of by a clause rather than to the amounts of the shares into which it would be divided.

An interpretation of the paragraph which would base the right to preference on the amounts of the separate shares or "bequests" received under a clause rather than on the aggregate amount given by such clause would render the use of the word "clauses" in the paragraph of little, if any, effect. And it would make such preference depend on facts apparently of little significance to the testator. Under clause 15 already quoted, for example, preference would be given if one or two children therein referred to were living at the testator's death but not if more than two such children were then living. Similar results would follow under each of the other clauses except clause 92.* It seems improbable that such results were intended. Moreover, on this interpretation, each clause would raise the question already referred to whether the amount given thereby constitutes a single bequest to a "class" or separate bequests to individuals. It is hardly probable that the testator intended preference to depend on such a technical distinction.

A will speaks as of the date of the testator's death in the sense that it refers to the state of things then existing, but,

---

* By clause 92 of the will, William Pittendreigh was given $10,000, if living at the testator's death; if he was not living, there was given "to each one of his children, who is living at said date, the sum of $2,000." William Pittendreigh died before the testator leaving three children who were living at the death of the testator. — REPORTER.

for purposes of construction, the circumstances known to him at the time of its execution are to be considered. See *Morse* v. *Mason,* 11 Allen, 36, 37; *McInnes* v. *Spillane,* 282 Mass. 514, 516. We think that, for the purpose of determining preferences, the second paragraph of clause 219 of the will is to be construed as referring to the situation of which the testator had definite knowledge when he executed the will and codicils — the terms of the clauses therein contained — rather than as referring to a situation which would remain uncertain until the date of his death — the manner in which the amounts would be divided. This conclusion is not vitiated by the unusual provisions of clause 92 according to which each beneficiary received a fixed amount so that the matter of preference could not have been determined solely from the terms of the clause but would depend in part on the number of beneficiaries living at the date of the testator's death. The presence of a single such clause in the will is not sufficient to change the interpretation of the second paragraph of clause 219 based on the will as a whole. Of course the question whether the paragraph would become effective, being dependent on the amount of the estate at the date of the testator's death, could not be determined until that time. It follows that each clause "making bequests of five thousand dollars" in the aggregate is entitled to preference.

On the interpretation here given to the second paragraph of clause 219 all the clauses referred to in the prayers of the petition now under consideration, except clauses 113 and 162 of the will, but including clause 92 thereof, and, consequently, the bequests made thereby, are entitled to preference. Obviously it was the intention of the testator that money which by force of this paragraph is not to be used for payment of deferred bequests is to be used for bequests preferred thereunder and does not fall into the residue.

1 D, 2 C, 6. Various clauses of the will and the first codicil, referred to in these prayers of the petition, by which less than $5,000 is given, raise the question whether such clauses are entitled to preference under the second para-

graph of clause 219 on the ground that they are "clauses creating trust funds" within the meaning of the paragraph. As already stated, this paragraph applies to clauses of the will and of the first codicil. And according to the natural construction of the language used, the phrase "clauses creating trust funds" is correlative with the phrase "those making bequests of five thousand dollars (5,000) or more" as a whole, the limitation in amount not applying to the former phrase.

Words in a will are to be given their ordinary meaning unless an intention to use them in some different sense is shown. *Thompson* v. *Clarke*, 264 Mass. 56, 60. That the testator knew how to create a trust fund by express words appears from the fact that he did so in several instances. But a trust fund can be created without using the word "trust" if the language of the will indicates such an intention. See Am. Law Inst. Restatement: Trusts, § 24, comment b. The phrase "creating trust funds" naturally includes trust funds so created, and the will and codicils do not show that its meaning is limited to trust funds created by express words of trust. It is necessary, therefore, to determine whether by each of the clauses of the will and first codicil referred to in these prayers of the petition an intention to create a trust fund is shown.

There are a number of clauses (clauses 62, 68, 69, 128, 172 and 177 of the will), differing somewhat in phraseology, of which the following is typical: "Clause 62. I give to Lady Mary Glyn of London, England, if she is living at the date of my death, the sum of one thousand (1,000) dollars in token of her kind friendship and for such charities as she may desire." Clause 68, however, refers to "good works" and clause 128 to "art purposes" instead of to "charities" and clause 177 makes no reference to friendship. Clauses 131 and 153 of the will differ from these clauses in that they refer to objects in which persons other than the named legatees are interested. Clause 131, without referring to friendship, refers to "such charities as . . . [the late husband of the legatee] may have been interested in." Clause 153 gives $500 to each of three named legatees

"in memory of their beloved brother, truest of friends and for such objects as had interests for him." Each of these gifts is contingent upon the legatee named being living at the date of the testator's death. The fact that the gift fails if the legatee is not then living is some indication that the testator's primary interest was in the legatee rather than in the use to be made of the money and that such legatee was intended to take beneficially. Even if the provisions relating to the use of the money should be construed as imperative the legatees would have wide discretion in its use. We think, considering each clause in its entirety, that these clauses are to be interpreted as stating motives for the gifts made thereby and suggesting rather than commanding uses for the money given — that is, that it was not intended to impose enforceable duties on the named legatees. Consequently, no one of these clauses created a trust fund. See *Pitts* v. *Milton*, 192 Mass. 88; *Poor* v. *Bradbury*, 196 Mass. 207; *Beals* v. *Villard*, 268 Mass. 129; Am. Law Inst. Restatement: Trusts, § 25.

Nor does clause 132 of the will create a trust fund. By this clause the sum of $500 is given to a named legatee, if living at the date of the testator's death, "as a token of personal regard and a gift to his young daughter." This gift is not in terms dependent on the survival of the daughter. No motive for a gift to her appears (compare *McCurdy* v. *McCallum*, 186 Mass. 464, 470), but the motive of the gift is regard for her father. Considered in connection with the other language of the clause the words "as . . . a gift to his young daughter" must be interpreted as words of request rather than of command. An unnumbered clause of the will between clauses 118 and 120 resembles clause 132 in some respects but there are significant differences. By this clause the testator gave to a named legatee, if living at the date of the death of the testator, "the sum of one thousand (1,000) dollars for the son for whom I was a Parrain and who bears my Christian name;" and provided further that "If said son is not living at the date of my death, then I give said sum . . . to his father, if he is living at said date." The stated motive of the gift relates to the son

rather than to the father and the alternative gift to the father, if the son is not living at the date of the testator's death, indicates that it was intended by the earlier part of the clause to make a gift for the benefit of the son. These considerations outweigh the considerations to the contrary and lead to the conclusion that a trust fund was created.

By clauses 178, 190, and 202 of the will sums of money are given to corporations which are charitable in the broad sense of the term, with directions to use the income of the money so given for limited purposes within the scope of the charitable purposes of the respective legatees. These gifts constitute public charities. The rules relating to the control of administration of money so given differ in some respects from those governing the control of administration of money given to an ordinary trustee. And it has been suggested that by reason of these differences such gifts do not create trusts. See Am. Law Inst. Restatement: Trusts, Introduction to chapter 11. But in other respects, — for example, with respect to the application of the *cy pres* doctrine, — the same rules of law are applicable as to ordinary trusts for charitable purposes. And in our cases, gifts to charitable corporations are referred to as gifts upon trust for such purposes. See *Hubbard* v. *Worcester Art Museum*, 194 Mass. 280, 289–290; *Read* v. *Willard Hospital*, 215 Mass. 132, 135. See also *Richards* v. *Church Home for Orphan & Destitute Children*, 213 Mass. 502. The intention of the testator as disclosed by the clauses here in question was to establish funds for the purposes therein described. We think that these clauses are to be regarded as "creating trust funds," within the meaning of the second paragraph of clause 219, though the gifts are made to charitable corporations for their own purposes. By clause 182 of the will also, read in connection with admitted facts which are part of the record, a trust fund was created. By this clause a sum of money is given "to the Municipal Charity Trustees of Salisbury, England," the income thereof to be used in connection with the "Holy Trinity Hospital" in the manner therein described. In view of what has been said the precise relation to the hospital of the legatee named

is not important.    It is not argued that this is not a gift
for public charitable purposes and discussion of that ques-
tion is not required.   See, however, *Sears* v. *Attorney General*,
193 Mass. 551, 553–555; *Sherman* v. *Shaw*, 243 Mass. 257.

By clause 3 of the first codicil the sum of $2,000 is given
"to the Committee of the Keats-Shelley Literary Associa-
tion . . . to be used for the upkeep of the library and
rooms."   The general principles already stated are appli-
cable.   But no extrinsic facts with respect to this legatee
appear in the record.   In the absence of such facts we are
unable to determine whether by this clause a trust fund
was created.

The clauses herein referred to which are held to create
trust funds are entitled to preference under the second para-
graph of clause 219 of the will.

4.   By this prayer of the petition instructions are sought
as to whether certain amounts given by clauses 3 and 211
of the will and clause 210 of the will as changed by clause
57 of the first codicil are to be used to pay deficiencies in
pecuniary legacies or are to be distributed to legatees named
in the residuary clause of the will as changed by the codicil,
though the assets of the estate are insufficient to pay the
previous pecuniary legacies in full.

By clause 3 of the will the sum of $5,000 is given to a
trustee (later trustees) to invest and reinvest and to pay
the income thereof to Mary Ann Quigley Brown for life
with a provision that "At her death said fund shall be dis-
tributed in accordance with the residuary clause of this
will."   The life tenant predeceased the testator so that the
time has arrived for distribution of the fund.   If this clause
means that the fund thereby created is to be distributed,
on the death of the life tenant, as a part of the residue, it
is to be applied, like lapsed legacies governed by the first
paragraph of clause 219 already considered, to the payment
of deficiencies in pecuniary legacies — including legacies de-
ferred under the second paragraph of clause 219 — since
there can be no real residue until previous pecuniary lega-
cies are paid in full.   See *Porter* v. *Howe*, 173 Mass. 521,
526–527; *In re Title Guarantee & Trust Co.* 195 N. Y. 339,

345; *In re Lyne's Estate*, L. R. 8 Eq. 482; *In re Tootal's Estate*, 2 Ch. D. 628. Apparently the residuary legatees make no contention to the contrary. They do contend, however, that clause 3 properly interpreted does not make the fund thereby given, after the death of the life tenant, a part of the residue of the estate, .but rather gives such fund directly to the legatees named in the residuary clause.

We think that clause 3, read in connection with other provisions of the will, makes the fund thereby given, after the death of the life tenant, a part of the residue. This clause does not purport to make gifts, after the death of the life tenant, to beneficiaries named in the "residuary clause" as designated legatees (compare *Matter of Reynolds*, 242 N. Y. 389), but rather provides that the fund should be subject in all respects to the provisions of the "residuary clause" (compare *In re Title Guarantee & Trust Co.* 195 N. Y. 339). Since the will and codicils are to be read together as one instrument, the "residuary clause" referred to in clause 3 is the "residuary clause" as changed by the codicil. And this "residuary clause" is the entire clause 220 of the will as changed by clause 60 of the first codicil which purports to dispose of the "rest and residue" of the testator's property — not, as contended by Willard A. Saunders, that part of the clause which gives to him the "balance of said residue in excess of twenty thousand (20,000) dollars" previously given by the clause to other legatees. The language of the clause shows that the testator thought of it in its entirety as a "residuary clause" in spite of priorities within it. See *Clarke* v. *Andover*, 207 Mass. 91, 96–97. The terms of the will before the court in *United States Trust Co.* v. *Black*, 146 N. Y. 1 — a case particularly relied on by Saunders — are materially different.

Clause 3 of the will gave an equitable life interest in the trust fund thereby created to Mary Ann Quigley Brown. The provision for distribution of the fund after her death makes doubly clear that she was to take no greater interest. And this provision created an interest in the trust fund in the nature of a reversion or remainder — the time when

it became operative being accelerated by the death of the life tenant before the testator. *Thompson* v. *Thornton,* 197 Mass. 273, 275. The "residuary clause" describes the "rest and residue" of the testator's property as including "all reversions and remainders." The provision of clause 3 providing for distribution of the trust fund after the death of the life tenant "in accordance with the residuary clause of this will" incorporates by reference this provision of the "residuary clause." Clauses 3 and 220, as changed, read together, therefore, mean that the reversion or remainder created by the former clause is to be treated as a part of the residue of the estate. As such, it is subject to the payment of deficiencies in pecuniary legacies — deferred as well as preferred under the second paragraph of clause 219 — in priority to payments to residuary legatees. *Warren* v. *Morris,* 248 Mass. 254, is not an authority to the contrary. See page 258.

There is nothing in the nature of the gifts made by the "residuary clause" to indicate that they were intended to have priority over previous pecuniary legacies. Two of the three residuary legatees receive substantial pecuniary legacies under other clauses of the will and first codicil. And one of these legatees — Willard A. Saunders — is given the "balance of said residue" in excess of the other legacies aggregating $20,000 "if any." It is a natural inference that these additional gifts were not intended to be preferred. And the other residuary gift can stand no better. The improbability that such a preference was intended appears more marked when clause 3 is considered in connection with clauses 210, as changed, and 211, which contain similar language and dispose in the aggregate of $462,000. Of course clause 3 is to be interpreted as if the life tenant had survived the testator. And it is argued that the testator did not intend that his estate in the hands of his executors or trustees should remain open for the payment of the pecuniary legacies generally until the death of this life tenant. This argument from convenience, — which has little basis apart from conjecture — does not meet the argument to the contrary based on the language used by the testator.

Since the life interest provided for in clause 3 did not come into existence before the time for termination of the trust created by that clause, there is no occasion for setting up the trust and the fund given by the clause is to be distributed by the petitioners as executors (see *Harlow* v. *Bailey*, 189 Mass. 208, 213) subject to the rules applicable to the payment of pecuniary legacies generally. See *Lyford* v. *McFetridge*, 228 Mass. 285, 289.

In like manner the amount given by clause 210 of the will as changed by clause 57 of the codicil is to be treated by the executors as a part of the residue subject to the payment of deficiencies in pecuniary legacies in priority to payment to residuary legatees. By this clause the sum of $62,000 was given to the Trustees of the Pine Grove Cemetery Association upon certain conditions, with a provision that "If said Trustees do not accept in writing within one year from the date of the allowance of this will, said gift upon the conditions herein set forth, then said sum . . . shall be divided in accordance with the residuary clause of this will." We assume, as was assumed in argument, that the trustees have declined the gift. The alternative provision for disposition of the fund therefore became operative. Though the clause may not create a technical reversion or remainder on nonacceptance of the gift by the trustees, we think the interest thereby created falls within the intended scope of the words "all reversions and remainders" used in the residuary clause in defining the "rest and residue" of the testator's property.

Clause 211 of the will makes a gift to the trustee (later trustees) of the sum of $400,000 upon terms similar to those of clause 3, except that the trust fund is to be "divided" rather than "distributed" upon the death of the life tenant. The life tenant is living. It is the duty of the executors to pay the amount available for this trust fund to themselves as trustees. We have considered this clause in interpreting other clauses. But since the time for the distribution of the trust fund created by this clause has not arrived, it does not appear that the petitioners require specific instructions

as to such distribution at the present time. *Old Colony Trust Co.* v. *Treasurer & Receiver General*, 243 Mass. 543.

5. Clause 173 of the will provides: "I give to Sir Ralph Anstrulters if he is living at the date of my death, the sum of one thousand (1,000) dollars to be held by him for the son of his late son" upon certain terms as to payment of income and principal. Sir Ralph Anstruther (called Anstrulters in the will) died prior to the death of the testator but the "son of his late son" survived the testator. Under the express terms of the gift, the legacy lapsed.

7. Clause 195 of the will is as follows: "I give to the Massachusetts Historical and Genealogical Society the sum of five thousand (5,000) dollars." No organization of the precise name has been found. The Massachusetts Historical Society and the New England Historic Genealogical Society, both Massachusetts corporations, claim the bequest. Extrinsic facts bearing on the nature of the corporations and the testator's relations to them appear in the record and may be considered in determining his intentions. See *Kingman* v. *New Bedford Home for Aged*, 237 Mass. 323, 326.

The Massachusetts Historical Society was organized in 1791 and incorporated in 1794. It has a building in Boston where its library and collections, consisting of historical material of all kinds, are kept. It has many collections of family papers and other material relating to family history. Its membership is limited to one hundred members; there are no membership dues and the society depends on its endowment and gifts for its support. The testator was never a member of this society. The New England Historic Genealogical Society was incorporated in 1845. It has a building in Boston where its library and collections, historical and genealogical in character, are kept. It has approximately twenty-four hundred members including annual members who pay annual dues and life members who have paid their dues in a lump sum. The testator became an annual member in 1895. He paid annual dues as such until he was transferred to life membership in 1919 on payment of the life membership dues of $50. At the time of

his proposal for membership in 1895 he furnished the society a very full statement of his own genealogy. From "sometime in the '80's" until 1914 the testator frequently visited the building of the Massachusetts Historical Society and would usually spend hours with the librarian conversing with him in regard to the testator's business affairs, his "varied interests in art, history, politics" and "genealogical matters." On different occasions the testator expressed respect and admiration for the librarian, the society and the distinguished men connected with it. This librarian was an annual member of the New England Historic Genealogical Society and frequently visited its building. The testator also called a number of times at the building occupied by the New England Historic Genealogical Society and talked with its librarian.

The question is very close. The only error in the description of the legatee in the will as applied to the Massachusetts Historical Society is the addition of the words "and Genealogical." The only substantial error in this description as applied to the New England Historic Genealogical Society is the substitution of "Massachusetts" for "New England," though there are other slight deviations from an exact description. It would be hard to say from the face of the will which society was intended. But the extrinsic evidence tends to show, in spite of the testator's membership in the New England Historic Genealogical Society, a greater personal interest on his part in the other society. Moreover, while the evidence shows some interest on the part of the testator in genealogy, it does not show a deep interest in the subject, and even that interest was displayed in conversations at the building of the Massachusetts Historical Society with its librarian as well as in the testator's relations with the New England Historic Genealogical Society. The fact that the building of the New England Historic Genealogical Society was in Boston might lead to the erroneous description of the society as a "Massachusetts" society rather than a "New England" society. In the light, however, of the evidence as a whole we incline to the view that the use of the words "and Genealogical" in the

name of the Massachusetts Historical Society was a more probable error than the substitution of "Massachusetts" for "New England" in the name of the other society and that the testator intended to describe the Massachusetts Historical Society. The petitioners are to be instructed to pay the legacy, so far as there is money available for the purpose, to the Massachusetts Historical Society.

8. Clause 192 of the will is as follows: "I give to the Board of Manufactures of Edinburgh, Scotland, for the National Portrait Gallery in Edinburgh, to be known as the 'Albert H. Whitin Purchase Fund,' the sum of ten thousand (10,000) dollars, the income to be used to purchase portraits, preference to be given portraits of Queen Mary and other members of the Royal House of Stuart." By clause 12 of the first codicil the testator gives the sum of $5,000 "to the National Portrait Gallery of Scotland." The petitioners seek instructions as to the disposition to be made of these bequests since they have found no gallery having the exact name used by the testator.

The petition states that the petitioners "are informed that the National Gallery of Scotland and the Scottish National Portrait Gallery are both located in Edinburgh and are both managed by a board appointed by the Secretary of State for Scotland and known as the Board of Trustees for the National Galleries of Scotland; that this board was constituted under the National Galleries of Scotland Act, 1906, and was established for the purpose of managing the national galleries of Scotland and for such other purposes connected with the promotion of the fine arts in Scotland, as may be prescribed. They are further informed that prior to the passing of the Act of Parliament in 1906 both the National Gallery of Scotland and the Scottish National Portrait Gallery were managed by the Commissioners of the Board of Trustees for Manufactures, located in Edinburgh, Scotland." These statements of fact are not controverted and no further material facts appear.

We think it evident that under clause 192 of the will the word "Portrait" in the description of the legatee is dominant and that the "Scottish National Portrait Gallery" is

meant and, furthermore, that clause 12 of the codicil refers to the same gallery.

The petitioners are to be instructed to pay the legacy given by clause 12 of the codicil to the Scottish National Portrait Gallery or to such body as may be authorized to receive a gift made thereto. They are to be instructed to pay the legacy by clause 192 of the will to the Commissioners of the Board of Trustees for Manufactures, located in Edinburgh, Scotland, for the benefit of the Scottish National Portrait Gallery, if such commissioners are entitled to receive a gift for that purpose; otherwise to the Board of Trustees for the National Galleries of Scotland for the same purpose.

9 A, 9 B. By clause 99 of the will a sum of money is given in trust, the income of which is to be paid to a named beneficiary. A similar gift in trust is made by clause 211 of the will. Questions are raised with respect to interest (or income) on the amounts so given. The will and codicils contain no special provisions fixing the time for payment to the trustees, or for the payment of pecuniary legacies generally. Pecuniary legacies are, therefore, payable at the expiration of one year from the date of the testator's death. The amounts given by these clauses are payable to the trustees at that time. *Loring* v. *Thompson*, 184 Mass. 103, 104, 106. *Wellman* v. *Boston Safe Deposit & Trust Co.* 295 Mass. 281, 283. But since the life tenants are entitled to income from the date of the testator's death, the amounts payable to the trustees, if the available assets of the estate were sufficient to pay the pecuniary legacies in full, would be increased by the amount of the income which actually could have been obtained on the principal given by the will during the year after the testator's death. (We are unable on this record to determine the amount which actually could have been obtained.) And in case the available assets are insufficient the amounts so increased must be used in prorating such assets among the pecuniary legatees, including these trustees, as of the date when the legacies became payable, the ordinary pecuniary legacies being taken for that purpose at the amounts stated in the will and codicils. The amounts

so determined as then payable to the pecuniary legatees, including these trustees, bear interest, after the expiration of a year from the death of the testator, at the statutory rate of four per cent (G. L. [Ter. Ed.] c. 197, § 20) as an incident of the legacies.  See *Loring* v. *Thompson*, 184 Mass. 103, for a full discussion and application of the governing principles.  See also *Ayer* v. *Ayer*, 128 Mass. 575, 578.  Interest after the expiration of one year from the testator's death, however, when the assets are insufficient to pay the preferred legacies in full, will not affect the proportions of the available assets to which the several legatees are entitled except as adjustments may be required where legacies are paid at different times.

10.  This prayer of the petition raises a question as to the right of Nathaniel Draper Whitin Allen to interest (or income) on a gift of $250,000 by clause 213 of the will. By this clause the testator gave to the trustee (later trustees) the sum of $250,000 for the following purposes: " (a)  To invest and reinvest the same in conservative securities with full power to change the form of investments from time to time, no purchaser to be responsible for the application of the purchase money.  (b)  If my niece, said Mary Alice accepts said homestead estate under the conditions specified in clause 212, then to pay the income to my said niece during her life.  (c)  At her death, or if she does not accept said homestead estate as hereinbefore specified, then at the time of my death, if said Linda Allen is living, to pay the income to said Linda Allen during her life.  (d)  If said Nathaniel Draper Whitin Allen shall accept said homestead estate at the date of the death of his mother, said Linda Allen, or at the date of the death of my said niece, Mary Alice, or at the date of my death under the aforesaid provisions governing the same, then the Trustee shall pay to said Nathaniel Draper Whitin Allen, said trust fund of two hundred and fifty thousand (250,000) dollars, discharged from all trusts."  Then follows a gift of the fund to the Trustees for the Diocese of Western Massachusetts if title to the homestead estate shall vest in them.  This clause of the will must be considered with

clause 212 by which the testator devised his homestead estate to his niece for life if she was able to accept the devise on certain prescribed conditions and did so "within a period of thirty days after the date of the allowance" of the will by a writing filed with the executors, but if she was unable to accept or did not do so, to Mrs. Linda Allen for life if she accepted "within thirty days after she becomes entitled to the same, by filing a written notice of her acceptance of the same in the Probate Court," with limitations not here material, and if neither of them accepted within the period specified, or on certain other contingencies, to Nathaniel Draper Whitin Allen in fee if "within a period of sixty days after he becomes entitled to the same, he shall accept the fee by a writing filed with the Probate Court." Then follows a devise of the homestead estate to Trustees for the Diocese of Western Massachusetts if Nathaniel Draper Whitin Allen did not become entitled to the fee therein under the earlier provisions.

The niece was unable to accept the devise to her. Mrs. Allen declined to accept. Nathaniel Draper Whitin Allen accepted the devise in fee in writing on June 10, 1935.

Allen contends that he is entitled to interest (or income) from the date of the testator's death because (a) clause 213 of the will created a life interest in the trust fund, but even if not, because (b) the purpose of the gift shows an intention on the part of the testator that interest (or income) shall be so paid. The contention cannot be sustained on either ground.

No life interest in the trust fund ever came into existence under clause 213. The language of this clause is to be interpreted as meaning that acceptance by a devisee of a life interest in the homestead estate under clause 212 is a condition precedent to the vesting in such devisee of a life interest in the trust fund created by clause 213. This is the natural meaning of the words used. See *Bell* v. *Nesmith*, 217 Mass. 254, 258–259. Evidently the testator did not intend that any equitable interest in the trust fund should vest in a life beneficiary unless a life estate in the home-

stead devised by clause 212 became absolute in such bene-
ficiary by acceptance.  We think it immaterial whether
under clause 212 the vesting of a life estate in the home-
stead was subject to the condition precedent of acceptance
by the devisee named (see *Nightingale* v. *Burrell*, 15 Pick.
104, 111) or a life estate vested immediately in such
devisee defeasible on nonacceptance within the time pre-
scribed.

Since the gifts of equitable life estates by clause 213
never came into existence, Allen became entitled to the
amount given by this clause discharged from all trusts.
Though trustees are interposed, Allen in legal effect is in
the same position as if the will had directed payment to
him by the executors and, in the absence of any indication
in the will of a different intention, the gift of money to him
became payable at the expiration of one year from the
date of the testator's death and bears interest at the statu-
tory rate from that date.  See *Lyford* v. *McFetridge*, 228
Mass. 285, 289; G. L. (Ter. Ed.) c. 197, § 20.  We find in
the will no indication of a different intention.  It contains
no express direction as to the time of payment to Allen.
The provision that if he accepts the homestead, "then"
the trustees shall pay the trust fund to him, means merely
"in the event of" such acceptance.  See *Hall* v. *Priest*,
6 Gray, 18, 24.  Clauses 212 and 213 are, indeed, inter-
related.  The testator may have contemplated that the
devisees of the homestead under clause 212 should receive
money for its maintenance under clause 213.  But the gifts
by clause 213 are not in terms for that purpose.  If a devisee
of a life estate had accepted the devise thereof, such devisee,
as a life beneficiary of the trust created by clause 213, under
the ordinary rule, would have been entitled to the income
of the trust fund from the date of the testator's death, or
at least from the time of such acceptance.  Such income
would have been available for the maintenance of the
homestead.  G. L. (Ter. Ed.) c. 197, § 26.  But Allen was
not a life beneficiary.  And he was not required to main-
tain the homestead.  It was devised to him in fee and he
could have sold it and retained the money given by clause

213. This pecuniary legacy, moreover, was given to him without express or implied limitation upon its use. In these circumstances we think that there is no such relation between the devise to him of the homestead by clause 212 and the gift of money to him by clause 213 as indicates an intention on the part of the testator that the ordinary rule governing payment of pecuniary legacies and interest thereon should not apply. Allen is not entitled to interest (or income) for the year immediately following the death of the testator. Thereafter the gift by clause 213, like pecuniary legacies generally, bears interest at the statutory rate of four per cent.

11. The petitioners seek instructions as to their duties with respect to the payment of Massachusetts inheritance taxes by reason of the third paragraph of clause 219 of the will above quoted. In the absence of any provision in a will directing a payment of such taxes from a special fund each taxable legacy bears its own tax. G. L. (Ter. Ed.) c. 65, § 7. By the paragraph in question the executor (now executors) is directed to pay certain taxes — which include the Massachusetts inheritance tax — "from the funds in his hands, included within the residue." The phrase "included within the residue" cannot be disregarded. It is a limitation upon the "funds" out of which such taxes are to be paid. When there is no "residue" the direction to the executors by this paragraph becomes inapplicable and each legacy bears its own tax. So far as the direction by this paragraph, that "all bequests . . . shall be paid in full" except "as provided in the preceding paragraph," means in full without deduction for taxes, it is subject to this limitation that there be a "residue" out of which such taxes can be paid.

There can be no "residue" unless the assets of the estate are sufficient to pay the bequests payment of which is deferred under "the preceding paragraph" — the second paragraph of clause 219. By that paragraph payment of such bequests is deferred only until the "clauses" therein referred to are "satisfied in full." These "clauses" would be "satisfied in full," within the meaning of that para-

graph, by payment of the gifts made thereby after deduction therefrom for inheritance taxes as required by law. Such deduction is prevented only by the third paragraph of clause 219 when applicable — not by those "clauses" themselves, nor by the second paragraph of clause 219. We find no intention disclosed by the will and codicils that payments of inheritance taxes on preferred gifts shall have priority over payments of deferred gifts.

The case is remanded to the Probate Court for the entry of a decree in accordance with this opinion. The allowance of costs and expenses taxed as between solicitor and client is to be in the discretion of the Probate Court. G. L. (Ter. Ed.) c. 215, § 45.

*Ordered accordingly.*